FITCH, Trustee, Respondent, vs. BANK OF GRAND RAPIDS, Appellant.

*May 4—June 1, 1911.*

*Bankruptcy: Preferences.*

1. The evidence in this case is *held* to show conclusively that more than four months before the filing of the petition in bankruptcy, the bankrupts made an absolute sale and delivery of their stock of goods, by the terms of which the wholesale houses to which they were indebted were to be paid in full from the purchase money and the balance thereof was to be prorated between two banks to which they owed sums aggregating more than the whole of such purchase price.

2. The purchase money having, pursuant to such agreement, been deposited by the purchaser in one of the banks, to be paid out to the creditors mentioned, belonged to such creditors, and the fact that the bills of the wholesale houses were to be approved by the bankrupts before payment did not give such bankrupts any title to or control over it.    A subsequent payment to the other bank of its *pro rata* share, within four months before the petition in bankruptcy was filed, did not, therefore, constitute a preference within the condemnation of subd. *a* of sec. 60 of the federal bankruptcy act.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

This action is brought by the plaintiff as trustee of the estate of A. B. Cotey and Henry C. Cotey, as A. B. Cotey & Son, bankrupts, to recover from the defendant bank the sum of $503.50 claimed by the plaintiff to be a preference under the bankruptcy laws of the United States. It was begun by service of summons and complaint on April 7, 1910. The petition for bankruptcy was filed March 22, 1909. After alleging the bankruptcy of Cotey & Son and A. B. Cotey and Henry C. Cotey on the 11th day of November, 1908, the complaint continued:

"That, as plaintiff is informed and believes, the said bankrupts were on said 11th day of November and for some time prior thereto had been negotiating with one R. B. Salter for a transfer of their stock of merchandise and goods to him and were negotiating and attempting to arrange with him so that he could take over their said stock of goods and merchandise and pay certain of their creditors, and that upon said 11th day of November final arrangements were made by and between said bankrupts and said R. B. Salter by the terms of which said R. B. Salter agreed to take over all the merchandise, stock and fixtures of said bankrupts for the sum of $4,000 and for and on behalf of said bankrupts to apply and use said sum of $4,000 to pay bills owing by said bankrupts to wholesale houses, of which there were a large number, and to apply the balance, if any remained, toward the payment of notes then held by the Pittsville State Bank and the *Bank of Grand Rapids.*

"On information and belief this plaintiff further shows that a brief memorandum of said agreement was at that time made by the said R. B. Salter, signed by him and delivered to the said bankrupts, which agreement is in words and figures following, to wit:

" 'I will take stock and fixtures for $4,000, you to return all book accounts to the Pittsville State Bank to be collected and paid *pro rata* to the said bank and the *Grand Rapids Bank;* you to pay over all cash for invoiced goods taken in; all claims

·of wholesale houses to be paid through the Pittsville State Bank after being O K'd by you. Nov. 11, 1908. R. B. Salter.'

"That, as plaintiff is informed and believes, pursuant to the terms of said agreement the said bankrupts did on or about said 11th day of November, 1908, without further or other consideration, turn over and deliver to the said R. B. Salter their full stock of merchandise, goods and fixtures, and also ·delivered to the said Bank of Pittsville the book accounts referred to in said memorandum of agreement, of all of which facts the defendant *Bank of Grand Rapids* had full knowledge and notice."

The jury by special verdict found that on the 13th day of November, 1908, the firm of A. B. Cotey & Son was insolvent; that the effect of the payment to the bank was to enable it to obtain a greater percentage of its debts against Cotey & Son than any other creditor of the same class; that the payment was made with the knowledge and consent of A. B. Cotey, a member of the firm of said Cotey & Son; and that the cashier of the defendant bank, Redford, had reasonable cause to believe that it was intended by A. B. Cotey & Son thereby to give a preference in favor of the defendant bank. Thereupon judgment was duly entered for the plaintiff in the sum of $503.50 with costs, from which judgment the defendant appealed.

For the appellant there was a brief by *Goggins & Brazeau,* and oral argument by *Theo. W. Brazeau.*

For the respondent there was a brief by *D. D. Conway,* attorney, and *Geo. L. Williams,* of counsel, and oral argument by *Mr. Conway.*

VINJE, J. Under the allegations of the complaint and the ·evidence in the case the vital question to determine is whether or not the preference was made November 11, 1908, or November 30, 1908. If it was made on the former date, then it did not come within the condemnation of subd. *a* of sec. 60 of the United States bankruptcy act [32 U. S. Stats. at Large,

p. 799, sec. 13; U. S. Comp. Stats. (Supp. 1909) p. 1314], which provides that:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The evidence substantially supports the allegations of the complaint, and it seems to us it appears conclusively from such evidence that on the 11th of November, 1908, more than four months before the petition in bankruptcy was filed, Cotey & Son made an absolute sale of their stock of goods to Salter, the terms of the sale being that Salter should pay $4,000 for the stock, and that payment should be made to the wholesale houses in full, and the balance of the $4,000 should be prorated between the two banks. The provision in the agreement that Cotey & Son should O K or approve the wholesale bills in no way affected the title to the money Salter paid. The evidence shows that on the 11th of November Cotey & Son owed wholesale houses from $2,300 to $2,800; they owed the Bank of Pittsville about $2,700, and the *Bank of Grand Rapids* about $2,400, so that if not a single bill of the wholesale houses had been approved the whole $4,000 belonged to the banks named. The balance ultimately to be paid the banks would of course depend upon the amount of bills belonging to wholesale houses approved. If they were all approved, only from $1,200 to $1,700 of the $4,000 would be prorated by the banks.

On November 11th Salter took possession of the stock of goods and dealt with it as his own. He deposited $4,000 in the Bank of Pittsville and paid it out pursuant to the agreement, paying on the 30th day of November the sum of $503.50

to the defendant bank on its claim against the bankrupts. The trial court instructed the jury that "the funds in the hands of the Pittsville bank, against which the Salter check was drawn and out of which it was paid, for the purposes of this case, was the money or assets of Cotey & Son, and as such subject to be lawfully applied to the payment of their lawful debts." In so instructing the jury the court erred, because the sale was an absolute one and the money in question belonged to the creditors mentioned in the agreement. Cotey & Son had no title to or control over it. At best their power to approve or disapprove of bills could only affect the proportionate share the wholesale-house creditors and the banks should receive. They could not reserve a penny for themselves nor for any other creditors.

The result arrived at as to the effect of the transaction of November 11, 1908, renders it unnecessary to consider the other questions discussed in the brief, namely, whether Cotey & Son were insolvent on the 30th day of November, 1908, whether the cashier, Redford, knew, or had reasonable cause to believe, that A. B. Cotey & Son were insolvent on said date or intended to give a preference to the defendant bank, whether the payment of the amount of $503.50 enabled the defendant bank to obtain a greater percentage of its debt against Cotey & Son than any other creditor of its class, and whether the payment by Salter to the cashier, Redford, was made with the knowledge and consent of A. B. Cotey & Son.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.